# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:20CR00014 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **TRACY LEONARD BROWN,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Lena L. Busscher and Whitney D. Pierce, Assistant United States Attorneys, Abingdon, Virginia, for United States; Donald R. Pender, Assistant Federal Public Defender, Charlottesville, Virginia, for Defendant.*

In this criminal prosecution, the defendant moved to suppress evidence obtained in a warrantless roadside search of a vehicle that he had been driving and argued that the illegal fruits of that search tainted a later search of the vehicle pursuant to a warrant.  An evidentiary hearing was held immediately prior to trial on the motion to suppress.  At the close of the hearing I orally denied the motion and announced that a written opinion would follow setting forth my findings of fact and reasons for denial.  This Opinion sets forth those findings and reasons.  I find that the warrantless search of the vehicle was conducted consistent with the Fourth Amendment.

I.

Based on my opportunity to assess the credibility of the witnesses, the following are my findings of fact.  I have taken into account the rationality and internal consistency of the testimony, the extent of detail and coherent nature of the testimony, the manner of testifying by the witnesses, and the degree to which the subject testimony is consistent or inconsistent with other evidence in the case.

On July 3, 2019, Carroll County Sheriff's Deputy David Johnson, Sergeant Jason Helton, and Deputy Chris Mabry were conducting a license checkpoint at the intersection of Wards Gap Road and Orchard Gap Road in rural Carroll County, Virginia.  The officers' three patrol cars were lined up beside a building on the northbound lane of Wards Gap Road facing the highway, while the officers stood outside their vehicles.  At approximately 4:30 p.m. a Black Chrysler 200 approached the officers coming northbound.  The Chrysler stopped about sixty yards from them, made an illegal U-turn over a double yellow line on Ward's Gap Road, and sped back in the direction it came from.

Deputy Johnson and Sergeant Helton got in separate marked patrol cars, turned their emergency lights and sirens on, and pursued the Chrysler.  The Chrysler led Deputy Johnson and Sergeant Helton on a high-speed chase southbound on Wards Gap Road — a two lane road — for about two or three miles.  The vehicle accelerated over one hundred miles per hour.  At one point, the Chrysler veered into

the opposite lane while attempting to pass a slower moving vehicle traveling in the same direction.   In that opposite lane, the Chrysler struck the vehicle it was attempting to pass, and crashed into a ditch on the southbound side of Wards Gap Road.

The sole occupant of the Chrysler then opened the driver's door and fled on foot.  Deputy Johnson pursued the suspect on foot into a field.  Sergeant Helton soon arrived at the field in his patrol car and cut the suspect off.  After the suspect resisted Officer Johnson's attempts to subdue him, Sergeant Helton exited his patrol car to assist and recognized the suspect to be defendant Brown.  Deputy Johnson was finally able to gain control over Brown by administering pepper spray, placing handcuffs on his wrists and shackles around his legs.  Deputy Johnson searched Brown's person after arresting him, finding a folding pocketknife in his front right pocket, and a closed, small blue circular zipper case in his front left pocket.  Deputy Johnson opened the case and found several bags of a crystalline substance that appeared in his experience and training to be methamphetamine.  Sergeant Helton, who has also been trained to identify methamphetamine by sight, also believed the substance in the zipper case to be methamphetamine.  Deputy Johnson and Sergeant Helton then placed Brown in Sergeant Helton's patrol car.

Brown had left the driver's side door of the Chrysler open when he fled. Standing outside of the car Deputy Johnson saw another blue zipper case lying on

the driver's-side floorboard that was open, unzipped, and with baggies sticking out of it that appeared to contain methamphetamine.  Hr'g Tr., 15:4–8, ECF No. 83.

The officers then conducted a search of the Chrysler.[1]

While standing outside the vehicle on the driver's side, Deputy Johnson observed a backpack on the front passenger's seat.  *Id*. at 18:13–15.[2]  He walked around and opened the passenger door, unzipped the backpack, and saw double-bagged plastic grocery bags with the handles tied closed at the top.  Deputy Johnson untied the grocery bags to find six separate plastic baggies consistent with drug packaging, which appeared to contain methamphetamine.  Deputy Johnson also saw a black metal box sitting on the backseat.  Deputy Johnson opened the rear driver's side door to access the box, lifted the unlocked lid, and found a loaded nine-millimeter Highpoint pistol.  *Id*. at 21:2–5.  The roadside search also yielded two

---

[1]  Deputy Johnson wrote in his incident report,  Mot. to Suppress Ex. 1 at 6, ECF No. 28-1, that the Chrysler was "searched incident to arrest," but during the hearing referred to the roadside search of the Chrysler as an "inventory search."  Hr'g Tr., 18, 25, ECF No 83.  For clarity, I refer to the July 3, 2019 warrantless search of the Chrysler at the scene of the crash as the "roadside search" or "warrantless search."

[2]  Deputy Johnson's later written police report states simply that the backpack was in the *front* of the vehicle and testified at the hearing that it was on the *front passenger's seat*.  *Id.* at 18:13–15.  Deputy Johnson did not take any pictures of the inside of the Chrysler.  The defense argued at the hearing that this difference damages Deputy Johnson's credibility.  I disagree.  Deputy Johnson's testimony is not inconsistent with his report.  I also found Deputy Johnson's testimony to be credible and corroborated to a large extent by Sergeant Helton's testimony.

digital scales, two cell phones, two watches, several plastic sandwich baggies, and approximately $3,800 in cash.

The Chrysler was then towed to a secure facility. That same day, officers obtained a warrant to search the vehicle for evidence of methamphetamine distribution. During that search, Sergeant Helton and members of the Twin County Drug Task Force found a second handgun, a Smith & Wesson M&P pistol with a loaded extended magazine, hidden in a tube sock and lodged behind the glove compartment, as well as a glass smoking pipe in the driver's side air vent, butane fuel, and other items. Officer Johnson later learned that the Chrysler was reported as stolen but did not know who stole it.[3]

## II.

The defendant has moved to suppress the evidence seized from the vehicle, namely the methamphetamine, two firearms, ammunition, and other contraband associated with illegal narcotics use and distribution.

The Fourth Amendment to the Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[3] The Supreme Court has stated that a "car thief would not have a reasonable expectation of privacy in a stolen car." *Byrd v. United States*, 138 S. Ct. 1518, 1529 (2018). Thus, "a person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile." *Id*. (quoting *Rakas v. Illinois*, 439 U.S. 128, 141, n.9 (1978)). I do not rely on this precedent because there was no evidence presented that Mr. Brown stole the vehicle or knew that it was stolen.

searches and seizures." U.S. Const. amend. IV. The Fourteenth Amendment incorporates this right and makes it enforceable against the states. *Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The Supreme Court has defined a search as either an invasion of an "actual (subjective) expectation of privacy" which "society is prepared to recognize as 'reasonable,'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan J., concurring), or a "physical intrusion of a constitutionally protected area," in an attempt to attain information, *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (internal quotation marks and citation omitted); *see United States v. Jones*, 565 U.S. 400, 408 n.5 (2012). Additionally, "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Karo*, 468 U.S. 705, 712 (1984) (internal citations omitted).

The Fourth Amendment generally requires that all searches be supported by a warrant based upon probable cause. *Katz*, 389 U.S. at 357. However, "[b]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Indeed, over time the Supreme Court has carved out "a few specifically established and well-delineated exceptions" to the warrant requirement. *Katz*, 389 U.S. at 357. Two exceptions to the warrant requirement: the seizure of

evidence in "plain view" and the search of a vehicle under the "automobile exception" provide the rules of decision for this motion.

A.

The Supreme Court first articulated the "plain view" doctrine in *Coolidge v. New Hampshire*, explaining that an officer who "inadvertently comes across an incriminating object," with a "legitimate reason for being present unconnected with a search directed against the accused," may seize the evidence without a warrant. 403 U.S. 443, 466 (1971).  The Court later articulated in *Horton v. California,* 496 U.S. 128, 136-37 (1990), that the plain view doctrine applies when: "(1) the seizing officer [is] lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face." *United States v. Williams*, 41 F.3d 192, 196 (4th Cir. 1994)).  The incriminating nature of an item is "immediately apparent" if an officer has "'*probable cause to associate the property with criminal activity*.'" *Texas v. Brown*, 460 U.S. 730, 741–42 (1983) (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)).

"The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment. . . ." *Minnesota v. Dickerson*, 508 U.S. 366,

7

375 (1993). Of course, an officer need not "close their eyes to what was in plain view [but] had the right to seize it." *United States v. Ball*, 381 F.2d 702, 704 (6th Cir. 1967).

Courts have frequently applied the "plain view" doctrine to evidence inside of an automobile. *See Brown*, 460 U.S. at 737 (upholding seizure of a party balloon containing heroin that officer observed in driver's hand, where officer also saw plastic vials, white powder, and an open bag of party balloons in the vehicle); *United States v. Hall*, 397 F. App'x. 860, 862 (4th Cir. 2010) (unpublished) (holding officer conducted a valid plain view seizure of marijuana visible on the vehicle's floor board); *United States v. Chulengarian*, 538 F.2d 553, 554 (4th Cir. 1976) (officer looked through open car door and seized open brown bag containing what appeared to be marijuana, along with marijuana cigarette, and smoking pipe); *see United States v. Johnson*, 599 F.3d 339, 347 (4th Cir. 2010) (gelcaps in plain view in a vehicle nearly identical to gelcaps containing heroin found on defendant's person).

After observing the witnesses and considering the evidence, I find that the officer's seizure of the zipper case inside the Chrysler was valid under the "plain view" doctrine, because each of *Horton*'s pre-requisites are satisfied. Deputy Johnson was in a lawful position to view the zipper case on the driver's floorboard while standing outside the open front driver's side door. Also, he had lawful access to the zipper case through the open front driver's side door. *See United States v.*

*Cunningham*, 546 F. App'x 203, 207–08 (4th Cir. 2013) (unpublished) (defendant fled from police on foot, leaving his truck at a gas station with the driver's side door open, and officers returned to the truck and seized a firearm in plain view on the seat).

Also, I conclude that the incriminating nature of the zipper case in the vehicle was immediately apparent, because there was probable cause to believe it contained illegal narcotics. The Supreme Court has adopted a "totality-of-the-circumstances" approach for probable cause determinations. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Under this test, the question before the issuing magistrate is "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 243, n. 13. It is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Rather, the Supreme Court has reiterated that the probable cause standard is a "practical, nontechnical conception." *Gates*, 462 U.S. at 231. It "is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.

Here, the totality of the circumstances in the moments before Deputy Johnson approached the Chrysler would give a reasonable officer probable cause to believe the zipper case he saw on the floorboard contained illegal contraband.  First, the zipper case was unzipped with several plastic baggies apparently containing methamphetamine sticking out of it.  Moments before, Deputy Johnson and Sergeant Helton had found a similar zipper case on Mr. Brown's person in a search incident to arrest that contained what they reasonably believed to be several plastic baggies of methamphetamine.   Additionally, the defendant exhibited highly suspicious behavior by performing an illegal turn on Ward's Gap Road, leading officers on a high-speed chase, and fleeing on foot after crashing the Chrysler.  Based on the totality of facts and circumstances, an objectively reasonable officer could conclude that the plastic baggies inside the zipper case were evidence of criminal activity.

## B.

Furthermore, the warrantless search of the entire vehicle and seizure of additional contraband therein were valid under the automobile exception to the warrant requirement.  The well-established automobile exception is rooted in almost one hundred years of precedent dating back to *Carroll v. United States*, 267 U.S. 132, 153-54 (1925).   Under this exception, the government may conduct a warrantless search of a vehicle if there is '"abundant probable cause' that the car contained contraband." *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *see United*

*States v. Ross*, 456 U.S. 798, 809 (1982).  The automobile exception permits "the search of every part of the vehicle and its contents that may conceal the object of the search."  *Ross*, 456 U.S. at 825.  This includes containers within the vehicle if there is probable cause to believe the object of the search could be found in the container. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

The Supreme Court has "justified application of the vehicular exception," to the warrant requirement because an automobile's "*use* as a readily mobile vehicle," and "the pervasive regulation of vehicles capable of traveling on the public highways," result in a lesser expectation of privacy in the vehicle and its contents. *California v. Carney*, 471 U.S. 386, 391, 392 (1985) (emphasis added).  Of course, "Officers may search a readily mobile automobile if they have probable cause to believe that their search will uncover contraband." *Johnson*, 599 F.3d at 347.  But "[e]ven where an automobile is not immediately mobile at the time of the search, 'the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception.'" *United States v. Fields*, 456 F.3d 519, 524 (5th Cir. 2006) (quoting *Carney*, 471 U.S. at 391).  Thus, courts have held that the automobile exception applies where a defendant's vehicle is rendered immobile, reasoning the defendant's *use* of the automobile as a readily mobile vehicle on public roads before the search sufficiently reduced their expectation of privacy in the vehicle.  *Id*. at 524 (upholding warrantless search under the automobile

exception because the defendant "used his Impala as a readily mobile vehicle throughout the police chase and in all the events leading up to his arrest and the search in question."); *United States v. Goncalvez*, 642 F.3d 245, 251 (1st Cir. 2011) (stating, "it would be enough for us to uphold the search under the automobile exception on the grounds that Goncalves had tried to flee with a car known to be used for carrying drugs, had been chased into a driveway, and then had fled so that probable cause certainly existed to believe that the car contained contraband and quite possibly a weapon").

In this case, I find that the government had probable cause to search the Chrysler for evidence of methamphetamine possession or distribution, which validates the warrantless search of the vehicle under the automobile exception and the subsequent search pursuant to a warrant. Moments before the warrantless search of the vehicle, Deputy Johnson observed two containers containing what appeared to be methamphetamine which both emanated from the same source — the Chrysler. Mr. Brown, who had immediately fled the vehicle, was found with a zipper case in his pocket that officers believed contained several baggies of methamphetamine. Deputy Johnson saw another zipper case, opened and containing what appeared to be more baggies of methamphetamine on the driver's floorboard inside the vehicle. Mr. Brown was apprehended a short time after he fled, so he would "not [have] had a chance to destroy or to remove the [contraband]" which could be lurking there. *Id.*

at 251.  Mr. Brown also evaded the officers by making an illegal U-turn and leading them on a high-speed chase, which "'is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.'" *Fields*, 456 F.3d at 524 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).  The drugs which emanated from the Chrysler immediately prior to the search, and the defendant's attempt to flee in the Chrysler would give a reasonable officer probable cause that the vehicle contained evidence of criminal activity.  *See Johnson*, 599 F.3d at 347 (concluding an officer had "all the more" probable cause to search defendant's vehicle after seeing gelcaps in plain view within the vehicle which were identical to gelcaps containing heroin found on defendant's person); *Hall*, 397 F. Appx. 860, 862 (unpublished) (holding officer's seizure of marijuana in plain view "gave police probable cause to conduct the search of the vehicle that ultimately led to the firearm's discovery" under a seat).

Moreover, any expectation of privacy that Mr. Brown had in the car was "'significantly' lesse[ned]," *Goncalves*, 642 F.3d at 251 (citation omitted), because he "used [it] as a readily mobile vehicle throughout the police chase and in all the events leading up to . . . the search in question."  *Fields*, 456 F.3d at 524.

Furthermore, the scope of the vehicle search permitted the officers to look inside the backpack and safe to find the evidence in question.  The Supreme Court has stated that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal

the object of the search." *Goncalves*, 642 F.3d at 250 (officers validly searched the gas cap of a vehicle suspected of containing contraband, because drugs could be hidden there) (quoting *Wyoming v. Houghton,* 526 U.S. 295, 301 (1999)).  Here, the officers had probable cause to believe that small items of contraband could be located inside the vehicle, so they were permitted to search everywhere in the car where such contraband could be reasonably found.   Deputy Johnson opened a backpack and untied grocery bags to find the six separate baggies which appeared to contain methamphetamine.  He also searched inside an unlocked metal box and found a nine-millimeter handgun.  The backpack and box were proper objects of the search because they could have concealed the contraband that the officers were looking for.[4]

III.

Based on the above facts, which are essentially undisputed, together with the applicable law, it is clear that the search of the vehicle, under all of the circumstances, did not violate the Constitution, and the evidence seized was not excludable at the defendant's trial.

---

[4]   The government also argues that the warrantless seizure can be upheld on the inevitable discovery doctrine based on the evidence that the officers were also conducting an inventory search on the roadside prior to having the vehicle towed, but it is not necessary for me to reach and consider that issue.

DATED:  October 11,2020

/s/  JAMES P. JONES
United States District Judge