## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:20CR00014 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **TRACY LEONARD BROWN,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Lena L. Busscher, Assistant United States Attorney, Abingdon, Virginia, for United States; Donald R. Pender, Assistant Federal Public Defender, Charlottesville, Virginia, for Defendant.*

The defendant has filed a Motion for a New Trial based upon new evidence, namely allegations from a Hispanic juror that other jurors exhibited racial animus and pressured him to vote guilty. The motion has been fully briefed, and for the reasons that follow, it will be denied.

## I.

The defendant, Tracy Leonard Brown, led police on a high-speed vehicle chase which resulted in the seizure of illegal drugs and firearms. Brown was resultingly charged in a superseding indictment and tried for possessing at least 500 grams of methamphetamine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count One); possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2) (Count Two); possessing a firearm in

relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three); and two counts of possession of methamphetamine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts Four and Five).

A.

The government's evidence during the three-day trial showed the following. On July 3, 2019, local sheriff's deputies arrested Brown after he made an illegal U-turn while approaching a license checkpoint. Brown led officers on a high-speed chase for a few miles, crashed the vehicle, and fled on foot. After chasing down and arresting Brown, officers conducted a search of his person and found a small zipper case containing plastic baggies of methamphetamine. Upon returning to the vehicle Brown had been driving, officers found a similar open zipper case containing plastic baggies on the driver's-side floorboard. They also located a backpack on the front passenger seat that contained over 800 grams of methamphetamine, a loaded pistol in an unlocked box in the backseat, two cell phones and drug paraphernalia. In a second search of the vehicle at a towing facility, officers found another loaded pistol hidden behind the glovebox.

At trial, the government presented testimony from the responding officers about the pursuit and searches, and introduced evidence seized from the defendant's person and the vehicle. The government also presented text messages from July 3, 2019, recovered from a cellphone that officers seized from Brown. Prior to the chase

by police, the cellphone had exchanged text messages with a contact named "Spyy" which stated, among other things, "Let me no that u got it"; "I got it"; and "Super careful.. they're out everywhere today." Gov. Trial Ex. 30, ECF No. 24. After Brown was arrested, he called Spyy's number from the jail.

Defense counsel elicited testimony on cross-examination that (1) the vehicle Brown was driving was not his (it had been stolen several days earlier by a person or persons unknown); (2) there were no photographs depicting where the drugs lay inside the vehicle before officers seized it; and (3) the government did not present forensic evidence such as DNA tying Brown to the drugs inside the vehicle.

The government also introduced audio recordings and witness testimony as to Brown's sale of methamphetamine to a confidential informant on June 18 and 21, 2019, prior to Brown's arrest.

The defendant presented no evidence.

## B.

On September 18, 2020, the jury began deliberations. About an hour and a half into deliberations, the court received a note from the foreperson. I read the contents of the note to the parties outside the presence of the jury. The note stated:

> There is a juror who refuses to see anyone else's opinion & will not budge in his own. This is not allowing for any forward movement of the decisions. The juror keeps referring to Mexican law. He will not accept any evidence being shown to him. What should we do about this situation?

Jury Question, ECF No. 77. After discussing my proposed course of action with counsel, and there being no objection, I brought the jury to the courtroom and reminded them of the "solemn oath" they took upon being sworn in that they would "try the issues in this case according to the law that I instructed you about . . . and the evidence that you heard in the courtroom." Trial Tr. Day 3, 117. I stated that "each of you must decide this case for yourself, but only after consideration of the evidence, the evidence presented in court, with the other members of the jury." *Id*. I told them that they should "try to reach an agreement, if you can," and "not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong." *Id*. I also reminded them that "each of you must decide the case for yourself, individually . . . after consideration of the evidence with the other members of the jury . . . Again, you have to decide the case individually, for yourself. That's important." *Id*. at 117–18. I then directed the jury to continue deliberations.

That same day the jury returned a verdict of guilty on four of the five charges, acquitting Brown on Count Five, related to the alleged methamphetamine sale on June 21, 2019. I read the written verdict aloud in the courtroom and then polled each juror individually. Each confirmed that the verdict was his or her own individual verdict.

C.

On September 25, 2020, a few days after the jury rendered its verdict, I received a letter in the mail from a juror, hereinafter called "Juror A," dated September 21, 2020. Juror A Letter, ECF No. 80-1. Therein, Juror A stated that he had been the only Hispanic member of the jury and that he did not believe the evidence was sufficient to convict the defendant. I placed the letter under seal and by Order on the docket, directed counsel to it, as follows: "The Clerk is directed to file the attached letter under seal and grant access to it to counsel for the United States and to counsel for the Defendant, who shall not disclose it to any others without leave of court." Order, Sept. 28, 2020, ECF No. 80.

Over three months later, before sentencing, Brown's counsel filed the present Motion for a New Trial, attaching a declaration of Juror A. Mot. New Trial Ex. 1, ECF No. 100-1. In that declaration, Juror A claims that the evidence did not convince him that the defendant was guilty because the lack of photographs provided him with reasonable doubt. The declaration states in a conclusionary manner that he was "mocked and intimidated" and that "[j]urors used my accent, and Mexican heritage to suggest that I was trying to apply Mexican law to the case." *Id.* at ¶ 4. He further stated that he had been "accused of not liking police officers and told that I must think cops are crooked." *Id.* at ¶ 5. He claimed that one juror "told me that he knew where I lived. He also told me about his guns. Later in deliberations he

left his chair, walked toward me, puffed out his chest in my face and took an aggressive stand while we discussed our opinions." *Id.* at ¶ 6. "A different juror told me I had to say yes and agree with the other jurors." *Id.* at ¶ 7.

The defendant argues that Juror A's declaration constitutes newly discovered evidence sufficient to grant a new trial, and that this newly discovered evidence is admissible for two reasons. First, the defendant contends that "a threat made against a juror for the purpose of securing a guilty verdict constitutes an outside influence on the deliberations" and is admissible to impeach a guilty verdict under Federal Rule of Evidence 606(b)(2). Mot. New Trial 4, ECF No. 100. Second, the defendant claims that the racial stereotypes cast against Juror A, the only racial minority on the jury, "raises the likelihood that racial bias played a role in jury deliberations." *Id.* The government has responded that Juror A's letter does not indicate racial bias in the jury's decision to convict, and intra-jury threats are not admissible evidence. The motion has been fully briefed and is ripe for review.

## II.

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Any such motion grounded on newly discovered evidence must be filed within three years after the verdict, Fed. R. Crim. P. 33(b)(1), and the defendant's motion is timely. Jury misconduct may be the basis for newly

discovered evidence. *See, e.g., United States v. Stone*, No. 19-0018 (ABJ), 2020 WL 1892360, at *21 (D.D.C. Apr. 16, 2020). A district court has broad discretion to grant or deny a defendant's motion for a new trial. *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006).

III.

Federal Rule of Evidence 606(b) prescribes a broad rule excluding juror testimony. According to that Rule, "During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations." Fed. R. Evid. 606(b)(1). This Rule partially captures the so-called "no impeachment rule" at common law, which stated that a verdict will not later be called into question based on the comments or conclusions that jurors expressed during deliberations. *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 861 (2017). Like its common law analogue, the purpose of Rule 606(b) is to protect the finality of jury verdicts and limit the harassment of jurors after a verdict has been reached. *Id*. at 861.

There are four exceptions. The Rule explicitly states that juror testimony is admissible if it concerns (1) "extraneous prejudicial information," (2) "an outside influence," or (3) "a mistake [that] was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2). Courts have interpreted the enumerated exceptions to encompass "news items about the matter pending before the court," "extra-record

facts about the case," "communications between third parties and jurors," or "pressures or partiality on the part of the court." *Virgin Island v. Gereau*, 523 F.2d 140, 150 (3d Cir. 1975) (collecting cases). The Supreme Court has also recognized that a juror's statements of "racial stereotypes or animus" are likewise admissible. *Peña-Rodriguez*, 137 S. Ct. at 869.

## A.

Federal Rule of Evidence 606(b) does not permit the admission of Juror A's testimony that other jurors coerced him into voting guilty. Such testimony falls squarely within the Rule's explicit prohibition of statements which "occurred during the jury's deliberations." Fed. R. Evid. 606(b)(1). Because of when the statements took place, they are not admissible as "extraneous" information or an "outside influence." *Id.* at 606(b)(2). Indeed, the Fourth Circuit has held that Rule 606(b) bars testimony concerning any "allegations regarding influences *internal* to the deliberation process." *Robinson v. Polk*, 438 F.3d 350, 363 (4th Cir. 2006) (emphasis added). The defendant argues that other jurors' intimidation during deliberations amount to an extraneous influence of illegal "jury tampering." Mot. New Trial 7, ECF No. 100. But even testimony that a juror used hostility and pressure to induce another juror to change his vote is inadmissible under Rule 606(b), because that Rule "prohibit[s] the use of *any* evidence of juror deliberations, subject only to the express exceptions for extraneous information and outside

influences." *Richardson v. Kornegay*, No. 18-6488, 2021 WL 2832893, at *10 (4th Cir. July 8, 2021). Thus, the text of Rule 606(b) does not permit consideration of Juror A's testimony in deciding this motion.

## B.

Nor is Juror A's testimony admissible to support a motion for a new trial under the racial animus exception compelled by the Sixth Amendment. That amendment provides a criminal defendant the right to a trial "by an impartial jury." U.S. Const. Amend. VI. The Supreme Court held in *Peña-Rodriguez v. Colorado* that this constitutional guarantee requires admitting a juror's statements of "racial stereotypes or animus" to impeach a verdict that is tainted by such bias. 137 S. Ct. at 869. There, the Court found admissible a juror's statement that he "believed the [Hispanic] defendant was guilty" of sexual assault because "Mexican men had a bravado that caused them to believe they could do whatever they wanted with women." *Id*. at 862. The Court reasoned that the statement tended to show the juror relied on a "dangerous racial stereotype to conclude [the defendant] was guilty and his alibi witness should not be believed." *Id*. at 870. In its holding, the Court stated that such testimony may only be considered on a motion for a new trial upon a "threshold showing" that (1) the statements "exhibit[ed] overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict" and

(2) "racial animus was a significant motivating factor in the juror's vote to convict." *Id*. at 869.

However, a juror's statements which simply evidence racial bias but do "not suggest that the speaker's racial animus in any way impacted her vote to convict" are insufficient. *United States v. Birchette*, 908 F.3d 50, 59 (4th Cir. 2018). Indeed, "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." *Peña-Rodriguez*, 137 S. Ct. at 869. The party seeking admission must meet the second prong of the *Peña-Rodriguez* threshold and draw a causal connection between the declarant juror's racial animus and their decision to convict. *Id*.

I do not find that Juror A's declaration has satisfied the first prong by indicating racial animus. In *Peña-Rodriguez*, the Court held that "where a juror makes a *clear statement* that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." 137 S. Ct. at 869 (emphasis added). The fact that Juror A, a Latinx, disagrees with the remaining members of the jury that he was attempting to apply Mexican law to the case does not clearly implicate racial stereotypes or animus.

Moreover, defendant Brown has not shown that any claimed racial animus played a "significant motivating factor" in their decision to convict. *Id*. Although the Supreme Court did not explicitly foreclose the admissibility of statements evidencing intra-jury racial animus in *Peña-Rodriguez*, the comments must have nevertheless influenced the jury's verdict to be admissible. *Id*. Brown has failed to articulate that causal connection. He has simply not shown how the jurors' alleged use of a racial stereotype against another juror, of a different race than his own, caused them to "conclude [he] was guilty," *id*. at 870, or "disregard[ ]" evidence or argument, *Harden v. Hillman*, 993 F.3d 465, 486 (6th Cir. 2021), or be unable to impartially assess his credibility, *Smith*, 2018 WL 1924454, at *10.

It is unequivocal that "racial bias in the justice system breeds a systemic loss of confidence in jury verdicts, a confidence that is a central premise of the Sixth Amendment trial right." *Richardson*, 2021 WL 2832893, at *15. But absent a nexus to show if or how racial animus impacted the verdict in this case, Brown has not made a threshold showing to admit such testimony under *Peña-Rodriguez*. *Birchette*, 908 F.3d at 59.

In conclusion, Juror A's testimony is not admissible under Rule 606(b). Without new admissible evidence the defendant's motion must be denied.

IV.

For the foregoing reasons, it is **ORDERED** that the defendant's Motion for a New Trial, ECF No. 100, is DENIED.  The Clerk shall schedule the sentencing of the defendant.

ENTER:  July 15, 2021

/s/  JAMES P. JONES
United States District Judge